[Civ. No. 31012. Fourth Dist., Div. One. June 5, 1985.]

CANDACE TWOHIG, Plaintiff and Appellant, v.
JANET BRINER, Defendant and Respondent.

COUNSEL

James J. Warner for Plaintiff and Appellant.

Morris, Polich & Purdy and Charles R. Bongard for Defendant and Respondent.

OPINION

**WORK, Acting P. J.**—Candace Twohig appeals a summary judgment in favor of Janet Briner on her complaint for personal injuries incurred while a passenger in a car from which the seat belts had been removed. ██ The sole issue is whether the trial court erred in granting summary judgment on the basis Briner, the driver and owner of the automobile, as a matter of law on these facts owed no duty to *provide* seat belts to her passengers. We conclude the trial court did err in granting summary judgment, because there exists a triable issue of fact regarding whether Briner breached her duty to exercise due care in the safe operation and maintenance of her vehicle owed to passengers when she *removed* the seat belts. Accordingly, we reverse the judgment.

## I

Twohig, a passenger in the front seat of a 1970 Volkswagen owned and driven by Briner, was injured in a two-car collision. At the time of the accident, there were no seat belts in the car for a passenger to use because it is alleged they were removed after Briner purchased it. Briner may not have been at fault in the accident.

Twohig's suit alleges Briner negligently operated and maintained her automobile, including its seat belts or by failing to install seatbelts. Briner filed Twohig's answers to interrogatories and responses to certain requests for admissions to support the motion for summary judgment. In response to the question "Do you contend that any act or omission on the part of [Briner] proximately caused or contributed to [the] injury?" Twohig answered, in part, "I spoke with [Briner] in regards to the seat belt availability, and she told me that they had been removed after she bought the car." Briner does not deny making the alleged statement, nor that the seat belts were removed while she owned the car.

## II

For the purposes of summary judgment, the trial court must have accepted as factual that Briner did own the car when the seat belts were removed and, in the absence of contrary evidence, that they were removed with her knowledge, because: ■ " '[T]he matter to be determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in its favor [fn. omitted] and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. ■ [¶] In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts.' " (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.,* (1971) 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953], quoting *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; *People* ex rel. *Deukmejian* v. *CHE, Inc.* (1983) 150 Cal.App.3d 123, 129 [197

Cal.Rptr. 484]; *Rebeiro* v. *Nor-Cal Integrated Ceilings* (1982) 135 Cal.App.3d 522, 525 [187 Cal.Rptr. 256]; *Elam* v. *College Park Hospital* (1982) 132 Cal.App.3d 332, 347 [183 Cal.Rptr. 156]; see *LaRosa* v. *Superior Court* (1981) 122 Cal.App.3d 741, 744-745 [176 Cal.Rptr. 224].) ▮ Simply stated, "[i]f any triable issue of fact exists, it is error for a trial court to grant a party's motion for summary judgment." (*Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 56 [192 Cal.Rptr. 857, 665 P.2d 947].)

## III

▮ Twohig concedes no statute requires a private owner/operator to provide seat belts in a motor vehicle. However, Twohig focuses on the general duty of due care Briner owes her, as a passenger, to operate the car in a reasonably safe manner and maintain it in a safe operating condition. She contends a triable issue of material fact exists regarding whether that duty was breached by Briner's removing already installed safety devices, seat belts.

As this court explained in *Marois* v. *Royal Investigation & Patrol, Inc.* (1984) 162 Cal.App.3d 193, 197-199 [208 Cal.Rptr. 384], judicial treatment of the concept of "duty" within the negligence context has left a legacy of analytical confusion. For instance, here the precise issue is not whether there exists a duty to provide seat belts, but rather whether a triable issue of fact exists regarding whether removing existing seat belts breaches the duty of due care owed a passenger.

▮ It is settled an owner/operator of a motor vehicle has a statutory and common law duty to use reasonable and ordinary care to prevent increasing the danger of injury to a passenger, or others, from operating or maintaining the automobile. (*Bewley* v. *Riggs* (1968) 262 Cal.App.2d 188, 194 [68 Cal.Rptr. 520]; *Sherman* v. *Frank* (1944) 63 Cal.App.2d 278, 282 [146 Cal.Rptr. 704]; *Spring* v. *McCabe* (1921) 53 Cal.App.330, 333 [200 P. 41]; Civ. Code, §§ 1708, 1714; Veh. Code, § 24002.) ▮ Thus, the issue is not, as Briner contends, whether she had a duty to provide Twohig a seat belt while a passenger in her car, but rather whether the risk of the particular harm suffered by Twohig was reasonably foreseeable under the circumstances and, if it were, whether it was unreasonable to remove the seat belts in light of the risk involved. (See generally *Marois* v. *Royal Investigation & Patrol, Inc., supra,* pp. 198, fn. 2, 201, fn. 6.)

▮ Foreseeability of risk is usually a question of fact. It may be decided by the trial court as a question of law only if " 'under the undisputed facts there is no room for a reasonable difference of opinion.' [Citations.]" (*Big-*

bee v. *Pacific Tel. & Tel. Co., supra,* 34 Cal.3d 49, 56, quoting *Schrimscher* v. *Bryson* (1976) 58 Cal.App.3d 660, 664 [130 Cal.Rptr. 125]; *Hedlund* v. *Superior Court* (1983) 34 Cal.3d 695, 705 [194 Cal.Rptr. 805, 669 P.2d 41].) ■ Accordingly, we determine here whether foreseeability remains a triable issue of fact, mindful " 'foreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct.' [Citation.] One may be held accountable for creating even ' "the risk of a slight possibility of injury if a reasonably prudent [person] would not do so." ' [Citations.] Moreover, it is settled that what is required to be foreseeable is the general character of the event or harm . . . not its precise nature or manner of occurrence. [Citations.]" (*Bigbee* v. *Pacific Tel. & Tel. Co., supra,* 34 Cal.3d 49, 57-58; see also *Gomez* v. *Ticor* (1983) 145 Cal.App.3d 622, 629 [193 Cal.Rptr. 600].)

In 1970, as now, "[i]t is . . . a matter of common knowledge that safety belts are effective in reducing fatalities and minimizing injuries in motor vehicle collisions. [Citations.]" (*Greyhound Lines, Inv.* v. *Superior Court* (1970) 3 Cal.App.3d 356, 358 [83 Cal.Rptr. 343].) Each year motor vehicle accidents kill approximately 50,000 Americans and injure another two million.[1] More than one-half of these fatalities and injuries result from "second collisions" when the occupant is either hurled against the vehicle's interior or ejected. Statistical studies show lap and shoulder seat belts reduce an occupant's chance of death and serious injury by 50 to 60 percent. (Comment, *Legal Issues Presented by Motor Vehicle Restraint Systems* (1984) 17 Akron L. R. 781; 3 Barzelay, Personal Injury—Scientific Automobile Accident Reconstruction (1984) pp. 31-47; see Ames, The Constitutionality of Mandatory Seat Belt Use Legislation (Va. Highway Research Council 1972) pp. 1-3.) "A seat belt, by its very nature, is designed to prevent 'second collision' injuries and has been effective in doing so [citation]." (*McMahon* v. *Butler* (1980) 73 App.Div.2d 197 [426 N.Y.S.2d 326, 327]; *Spier* v. *Barker* (1974) 35 N.Y.2d 444 [323 N.E.2d 164, 168-169, 80 A.L.R.3d 1025].) By restraining the automobile occupant during and immediately after initial impact, it significantly reduces the likelihood of ejection and "second collision" injuries, while providing the driver with more effective control of the vehicle in accident situations. (*Spier* v. *Barker, supra,* 323 N.E.2d at pp. 168-169; 3 Barzelay, *supra,* at pp. 31-6, 31-46, 31-47.)

---

[1]In fact, "[s]ince 1929, motor vehicles have been the leading cause of accidental deaths and injuries in the United States. In 1982, 46,300 Americans died in motor vehicle accidents and hundreds of thousands more were maimed and injured. [Fn. omitted.]" (*Motor Vehicle Mfrs. Ass'n* v. *State Farm Mut.* (1983) 463 U.S. 29, 33 [77 L.Ed.2d 443, 451, 103 S.Ct. 2856, 2861].)

The immense proportions of the carnage occurring on our highways caused the installation in 1964 of front seat lap belts in all cars as standard equipment. Fourteen states, including California, already required them.[2] The following year, rear seat belts were added. In 1966, Congress reacted to the alarming number of deaths and personal injuries on the nation's highways by enacting the National Traffic and Motor Vehicle Safety Act of 1966. (15 U.S.C. § 1381 et seq.)[3] Pursuant to the Act, the Secretary of Transportation delegated the authority and responsibility of issuing motor vehicle safety standards to the United States National Highway Traffic Safety Administration (NHTSA). The NHTSA promulgated the original Federal Motor Vehicle Safety Standard 208 in 1967 requiring manufacturers to install seat belts in all new cars after January 1, 1968, (32 Fed.Reg. 2408, 2415 (Feb. 3, 1967)).[4] (See *Motor Vehicle Mfrs. Ass'n* v. *State Farm Mut.,* *supra,* 463 U.S. 29, 35, 77 L.Ed.2d 443, 452, 103 S.Ct. 2856, 2862]; *State Farm Mut. Auto. Ins.* v. *Department of Transp.,* (D.C.Cir. 1982) 680 F.2d 206, 209, vacated and remanded by *Motor Vehicle Mfrs. Ass'n* v. *State Farm Mut., supra,* 463 U.S. 29; 3 Barzelay, *supra,* Personal Injury—Scientific Automobile Accident Reconstruction, at pp. 31-3 through 31-4, 31-45; Ames, *supra,* at p. 1; Com., *Legal Issues Presented By Motor Vehicle Restraint Systems, supra,* 17 Akron L.Rev. 781-782; Note, *Seatbelts Anyone?—Department of Transportation Attempts to "Unbuckle" the Auto Industry from Passive Restraint Requirements: State Farm v. Department of Transportation* (1983) 14 Toledo L.Rev. 1091, 1094-1095.)

 We conclude there exists a triable issue of fact whether Briner breached her duty to exercise due care in operating and maintaining her vehicle by removing the seatbelts, thus exposing passengers to increased danger by eliminating their option to "buckle up" so as to reduce the probability of suffering personal injuries resulting from "second collisions."[5] It

---

[2]The California Legislature passed in 1963 former Vehicle Code section 27309 requiring installation of seat belts in all new passenger vehicles after January 1, 1964. (Stats. 1963, ch. 997, § 1 p. 2260.) This section was repealed in 1968 (Stats. 1968, ch. 980 § 27, p. 1874), in apparent recognition of federal preemption in the regulation of safety belts. (See former Vehicle Code, § 2402.5; Cal.Admin. Code, tit. 13, §§ 980, 983.)

[3]By 1967 and before the federal requirement went into effect mandating seat belt installations, 32 states required installation in all new automobiles. (3 Barzelay, *supra,* Personal Injury—Scientific Automobile Accident Reconstruction, pp. 31-47.)

[4]More precisely, Standard 208 required manufacturers to install a lap belt for each occupant and a shoulder harness for the outboard front seat occupant consistent with Standard 209, regulating seat belt assemblies. (32 Fed. Reg. 2408, 2415; 3 Barzelay, *supra,* Personal Injury—Scientific Automobile Accident Reconstruction, pp. 31-45.)

[5]This record does not show Briner expressly admits she, or anyone, removed the seat belts, either before or after she became the owner. Therefore, this also may pose questions of fact. If, however, Twohig proves Briner or someone with her consent did remove the seat belts while she was the owner, we believe her negligence would be established as a matter of law in light of the data and history set forth in this opinion. In that event, other triable issues, including causation, comparative negligence and damages, would remain.

is entirely foreseeable, indeed likely, an owner/operator of an automobile will be involved in vehicle accidents resulting in "second collision" injuries to passengers even when driving with due care. In light of the circumstances of modern life, Briner should have foreseen the probability of the very type of accident occurring here, with "second collision" injuries to her passenger. Moreover, it is of no consequence the accident was caused solely by the fault of a third party, because the likelihood a third person may so act constitutes a hazard underscoring Briner's negligence, if in fact it is established she removed manufacturer-installed seat belts from her 1970 Volkswagen, and thus does not sever liability for the resulting harm. (*Bigbee* v. *Pacific Tel. & Tel. Co., supra,* 34 Cal.3d 49, 58-59, and cases cited therein.)[6]

Indeed, just as an available and visible seat belt provides a passenger with an opportunity to mitigate damages by minimizing his or her exposure to potential injury before an accident (*Spier* v. *Barker, supra,* 323 N.E.2d 164, 168), so does an owner/operator have the opportunity to lessen that risk by refraining from removing manufacturer-installed passenger seat belts. Since the "seat belt defense" in this state places the burden of "buckling up" on the passenger (*Franklin* v. *Gibson* (1982) 138 Cal.App.3d 340, 342-344 [188 Cal.Rptr. 23]), at minimum, an owner/operator should not remove installed auto safety belts.

Judgment reversed.

Adams, J.,* concurred.

---

[6]We note California case precedent within the context of duties owed by an employer under the Federal Employer's Liability Act (FELA) and a common carrier under California statutory and common law have held that failure to equip motor vehicles with seat belts constitutes a triable issue of fact for the jury as to both negligence and proximate causation. (*Mortensen* v. *Southern Pacific Co.* (1966) 245 Cal.App.2d 241 [53 Cal.Rptr. 851]; *Greyhound Lines, Inv.* v. *Superior Court, supra,* 3 Cal.App.3d 356.) In addition, it is worth noting that both cases approach their respective analysis by not evaluating whether there exists a duty to provide seat belts, but rather whether failure to provide them amounted to negligence or a breach of a special duty of due care owed by an employer to an employee under the FELA or a common carrier to a passenger.

Within the common carrier context, the Iowa and Pennsylvania Supreme Courts have each refused to hold a taxi cab company's failure to provide seat belts for its passengers constitutes negligence as a matter of law. (See *Tiemeyer* v. *McIntosh* (Iowa 1970) 176 N.W.2d 819, 821-822 [49 A.L.R.3d 285, 287-290]; *Benson* v. *Penn Central Transportation Company* (1975) 463 Pa. 37 [342 A.2d 393, 397].) However, in California, under similar circumstances, the Court of Appeal in *McNeil* v. *Yellow Cab Co.* (1978) 85 Cal.App.3d 116, 118 [147 Cal.Rptr. 733], followed the reasoning of *Greyhound Lines, Inc.* v. *Superior Court, supra,* 3 Cal.App.3d 356, 360. (See generally, Annot., Liability of Owner Or Operator of Motor Vehicle or Aircraft for Injury or Death Allegedly Resulting from Failure to Furnish or Require Use of Seatbelt, (1973) 49 A.L.R.3d 295.)

*Assigned by the Chairperson of the Judicial Council.

**LEWIS, J.**—I concur in the result, but disagree with the assertion in the footnote that removal of seat belts was negligent as a matter of law. I would expect defendant to be permitted to introduce evidence as to the condition of the seat belts, defendant's experience as to whether any passengers had ever used the seat belts, and whatever other evidence might bear on the reasonableness of defendant's conduct under all the circumstances, and for a jury to make the decision as to whether defendant's conduct was below the standard of care for a reasonably prudent person.