THOMAS, J.
 

 Sheena and Brian Russell, plaintiffs in the personal injury action below, raise three issues on appeal, arguing that the trial court erred by: 1) denying their motion for directed verdict or, alternatively, new trial, with respect to the issue of comparative negligence; 2) denying their motion for additur or new trial with respect to the jury’s zero verdict for past lost wages; and 3) the trial court’s denial of certain cost items they sought to tax against Appellee. For the reasons explained below, we reverse as to the first issue. We affirm the second and third issues without further comment.
 

 Factual Background
 

 Appellant Sheena Russell (Russell) was the lead driver in a rear-end motor vehicle accident. Appellee conceded fault for causing the collision. Likewise, Russell admitted she was not wearing an available and functional seatbelt at the time of the collision. She testified that at the time of the collision her head went forward, causing her face to strike the steering wheel, followed by her head jerking back against the head rest. She suffered a “whiplash” type of cervical injury and presented evidence of a bulging cervical disc, the cause and extent of which was contested. Russell neither sought nor received treatment for any facial injuries. By the time of trial, Russell sought damages for various problems she contended stem from her neck injury.
 

 Appellee asserted the “seatbelt defense,” arguing that Russell’s admitted failure to wear a seatbelt contributed to her cervical injury, if in fact she had such an injury. Consequently, the jury was asked to apportion negligence between Russell and Appellee. At the close of the evidence, Russell moved for a directed verdict on the apportionment issue, arguing that Appellee failed to present competent evidence that Russell’s failure to wear a seatbelt contributed substantially to her neck injury. The trial court denied the motion, and the jury ultimately decided that Russell was 35% at fault for her neck
 
 *998
 
 injury. Post-trial, Appellants renewed their directed verdict motion on this issue and, as an alternative, requested a new trial. The trial court denied both motions.
 

 Analysis
 

 In Insurance Co. of North America v. Pasakamis,
 
 451 So.2d 447, 454 (Fla. 1984), our supreme court held:
 

 Nonuse of the seat belt may or may not amount to a failure to use reasonable care on the part of the plaintiff. Whether it does depends on the particular circumstances of the case. Defendant has the burden of pleading and proving ... that there was a causal relationship between the injuries sustained by the plaintiff and plaintiffs failure to buckle up. If there is competent evidence to prove that the failure to use an available and operational seat belt produced or contributed substantially to producing at least a portion of plaintiffs damages, then the jury should be permitted to consider this factor, along with all other facts in evidence, in deciding whether the damages for which defendant may otherwise be liable should be reduced.
 

 “The ‘competent evidence’ standard referred to in
 
 Pasakamis
 
 requires a defendant to introduce evidence of the causal relationship between the injury and the failure to use a seat belt that is not uncertain, speculative, or conjectural-because that is the evidentiary standard applicable to plaintiffs for establishing their damages.”
 
 State Farm Mut. Auto. Ins. Co. v. Smith,
 
 565 So.2d 751, 754 n. 8 (Fla. 5th DCA 1990).
 

 This court considered the issue of the evidence necessary for supporting a seat-belt defense in
 
 Houghton v. Bond,
 
 680 So.2d 514 (Fla. 1st DCA 1996). The court noted:
 

 Whether a defendant is obliged at all to present expert testimony in support of a seatbelt defense appears to depend upon the nature of the plaintiffs injuries. From what we can glean from the reported cases, the rule appears to be that in certain cases,
 
 such as those involving non-impact sprain/strain or orthopedic injuries (e.g., a herniated disc),
 
 the party offering a seatbelt defense is required to present expert testimony because the precise cause of the plaintiffs injury (i.e., whether the injury would have occurred had the plaintiff worn his seatbelt) is not within the province of the jury.
 

 Id.
 
 at 523 (emphasis added).
 

 Here, the injury in question was Russell’s cervical disc injury. Thus, pursuant to
 
 Bond,
 
 Russell was required to present expert evidence in support of her seatbelt defense. There was no accident reconstruction expert in this case, leaving only expert medical evidence. Our review of the medical testimony reveals just three instances where Russell’s failure to wear a seatbelt was discussed with an expert.
 

 In the first, one of Russell’s treating doctors, Dr. Sheldon, was asked by defense counsel to confirm that his records reflected Russell was not wearing her seat-belt at the time of the collision, which he did. Counsel then asked, “And she described the accident to you by saying, I hit my nose on the steering wheel, then my head slammed back on the seat?” Dr. Sheldon answered, “Yes.” Counsel did not follow up with any question regarding what, if any, connection there was between Russell being unrestrained and her cervical disc injury. On re-direct, Dr. Sheldon confirmed that he never treated Russell for her nose or any other type of facial injury.
 

 Similarly, defense counsel’s examination of Dr. VerVoort on the seatbelt topic was limited to asking whether he was aware that Russell was not wearing a seatbelt at
 
 *999
 
 the time of the collision, and he replied that he was. Again, counsel asked no follow-up questions regarding what, if any, significance this had regarding the existence and/or extent of Russell’s injury.
 

 The only other instance in which a medical expert was asked about what, if any, role Russell’s failure to wear a seatbelt played in her injury occurred during the examination of the defense’s own expert, Dr. Koulisis. After the doctor confirmed that he was aware Russell was not wearing a seatbelt, defense counsel asked whether that failure “caus[ed] or contributed substantially to any injuries she may have sustained, the whiplash?” The doctor replied, “Theoretically, it could have made it a bit worse.” As noted earlier, however, the “competent evidence” standard requires evidence that “is not uncertain, speculative, or conjectural.”
 
 Smith,
 
 565 So.2d at 754 n. 8. Thus, Dr. Koulisis’ response does not meet that standard. Also, the test is whether the failure “substantially” contributed to producing at least a part of Russell’s injury, not that it may have made the injury “a bit worse.”
 

 On cross-examination, Russell’s counsel questioned Dr. Koulisis about his deposition testimony on this topic. When asked about the causal relationship between Russell’s failure to wear a seatbelt and her injury, Dr. Koulisis responded, “Did it make a big difference, no, because it wasn’t a big accident.” When asked if he was changing that opinion at trial, he replied, “No, same thing.” When asked if a seatbelt is “no big deal,” Dr. Koulisis replied, “Well, now let’s not go there now. You know, if you’re hitting a tree at 50 miles an hour, it’s a real big deal.” Dr. Koulisis then recounted that he was asked if the lack of a seatbelt
 
 could
 
 have been a big deal in this case, but that he did not think it actually made a “big difference.” Dr. Koulisis further testified that he did not think Russell was any worse off as of the time of trial than she would have been had she worn a seatbelt. Again, this testimony was insufficient to satisfy the
 
 Pasa-kamis
 
 standard that a defendant present “competent evidence to prove that the failure to use an available and operational seat belt produced or contributed
 
 substantially
 
 to producing at least a portion of plaintiffs damages.” 451 So.2d at 454.
 

 Russell testified that had she been wearing a seatbelt, her head would not have gone forward far enough to hit the steering wheel and then fling back into the head rest as creating “a causal relationship herself.” Appellee argues this was sufficient to satisfy its evidentiary burden. This argument is meritless. Russell is not an expert qualified to testify as to whether and to what extent she would have experienced a cervical disc injury had she been wearing a seatbelt.
 

 Conclusion
 

 Based on the foregoing, the trial court erred by failing to grant Appellants’ motion for a directed verdict on the seatbelt defense and the attendant apportionment of fault. We reverse and remand with instructions to the trial court to enter a judgment in Appellants’ favor on the issue of liability, and adjust the damage award accordingly.
 
 See DO & CO Miami Catering, Inc. v. Chapman,
 
 899 So.2d 1286, 1237-38 (Fla. 3d DCA 2005) (affirming directed verdict on seatbelt defense where defendant presented no evidence to meet its burden of proof, and comparing the facts to those in Bond).
 

 AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.
 

 PADOVANO and LEWIS, JJ., concur.